UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| W. H. R., IV, a minor, by his mother<br>NASHIMBE A.D. BROWN,<br><br>                 Plaintiff,<br><br>                 v.<br><br>NANCY A. BERRYHILL, Acting Commissioner<br>of the Social Security Administration,<br><br>                 Defendant. | Case No. 1:16-cv-00586-TWP-MJD |

### ENTRY ON JUDICIAL REVIEW

Claimant W.H.R., IV ("W.H.R."), a minor, by his mother Nashimbe A.D. Brown ("Ms. Brown"), requests judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. § 1382. For the reasons below, the Court **REMANDS** the decision of the Commissioner for further consideration.

### I. BACKGROUND

**A.** **Procedural History**

W.H.R., by and through his mother, filed an application for SSI on December 10, 2012, when he was ten years old, alleging a disability onset date of November 27, 2002. (Filing No. 13-2 at 15.) The claim was denied initially and on reconsideration. (Filing No. 13-3.) W.H.R. requested a hearing, which was held on October 9, 2014 in front of Administrative Law Judge D. Lyndell Pickett ("the ALJ"). (Filing No. 13-2 at 34.) On November 14, 2014, the ALJ determined that the claimant is not disabled as defined by the Act. (Filing No. 13-2 at 25.) The Appeals Council denied W.H.R.'s request for review, making the ALJ's decision the final decision of the

Commissioner for purposes of judicial review. (Filing No. 13-2 at 2.) Ms. Brown filed this complaint pursuant to 42 U.S.C. § 405.

**B.     Factual History**

W.H.R. was born in 2002. At the time of his alleged disability onset date, he was ten years old. Ms. Brown reported that W.H.R. was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") in kindergarten and that he has struggled with performance and behavioral issues at school. (Filing No. 13-7 at 2-3.) She described his behavior at home as problematic—for example, he fights with his siblings and does his chores only with repeated prompting. (Filing No. 13-2 at 38-42.) W.H.R. is under the care of a treating physician, Dr. Chrystal Anderson, who prescribed him the medication Concerta for treatment of his ADHD. (Filing No. 13-7 at 78.) Her treatment notes indicate that while on the medication, W.H.R.'s behavior, hyperactivity, inattentiveness, impulsivity, learning, and socializing improve. (Filing No. 13-7 at 36-38.)

On March 14, 2012, Dr. Paul Deardorff ("Dr. Deardorff") conducted an evaluation of W.H.R. (Filing No. 13-7 at 12.) Dr. Deardorff administered the Wechsler Intelligence Scale for Children – Fourth Edition. (Filing No. 13-7 at 16.) Dr. Deardorff assessed a full scale IQ of 69, "indicating that he is currently functioning in the mildly retarded range of intelligence or at about the 2nd percentile for his age group." (Filing No. 13-7 at 16.) Dr. Deardorff concluded that "[t]est data suggests that he is mildly mentally retarded but his easy distractibility very likely interfered with his performance on this measure as he appears to be of borderline to low-average intelligence." (Filing No. 13-7 at 17.)

An Individual Education Program ("IEP") report dated November 29, 2012 stated that W.H.R.'s performance on the cognitive assessment "ranged from mildly delayed to average range. Furthermore, his adaptive skills were rated to be within the average range while in the school

2

setting. Therefore, [W.H.R.] does not exhibit a profile consistent of a student with a Cognitive Disability." (Filing No. 13-7 at 22.) The report further concluded that W.H.R.'s "educational difficulties are more consistent with those of a student with an 'Other Health Impairment' based on his medical diagnosis of ADHD; low academic grades; behavioral data; and classroom observation of his on/off task behaviors." (Filing No. 13-7 at 22.)

On March 1, 2013, W.H.R. was examined by psychologist Kimberly Moran, Psy.D. ("Dr. Moran"). (Filing No. 13-7 at 2.) Dr. Moran concluded that W.H.R. appeared to be of below average intelligence, based on his ability to comprehend questions, his speech, and his grammar. (Filing No. 13-7 at 4.) Based on her examination, Dr. Moran diagnosed W.H.R. with ADHD, combined type; disruptive behavior disorder, NOS; and borderline intellectual functioning. (Filing No. 13-7 at 6.)

On March 25, 2013, state agency reviewing psychologist Dr. William Shipley reviewed W.H.R.'s medical records and opined that W.H.R. had the following limitations: less than marked limitation in acquiring and using information; less than marked limitation in attending and completing tasks; marked limitation in interacting and relating with others; no limitation in moving about and manipulation of objects; less than marked limitation in caring for himself; and no limitation in health and physical well-being. (Filing No. 13-3 at 19-20.) Dr. Shipley concluded that W.H.R. did not meet, medically equal, or functionally equal Listings 112.11 (ADHD) or 112.02 (Organic Mental Disorders).

On May 7, 2013, state agency reviewing psychologist Dr. Joseph Pressner reviewed W.H.R.'s medical records. (Filing No. 13-3 at 11.) He concluded that W.H.R. had the following limitations: marked limitation in acquiring and using information; less than marked limitation in attending and completing tasks; less than marked limitation in interacting and relating with others;

3

less than marked limitation in caring for himself; and no limitation in health and physical well-being. (Filing No. 13-3 at 15-16.) Dr. Pressner concluded that W.H.R. did not meet, medically equal, or functionally equal Listings 112.11 (ADHD) or 112.02 (Organic Mental Disorders).

And finally, a second IEP report dated February 28, 2014 concluded that W.H.R. did not exhibit a profile consistent with cognitive disability "due to his intellectual functioning and adaptive skills being higher than 2 standard deviations below the mean." (Filing No. 13-7 at 51.)

At step one of his analysis, the ALJ concluded that W.H.R. has not engaged in substantial gainful activity since his application date. (Filing No. 13-2 at 15.) At step two, the ALJ determined that W.H.R. has the following severe impairments: "attention deficit hyperactivity disorder (ADHD) and borderline intellectual ability (BIF)." (Filing No. 13-2 at 15.)

At step three, the ALJ concluded that W.H.R. did not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. First, the ALJ stated that he

> considered the record as a whole and found that no treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment. The undersigned also considered the opinions of the State Agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion.

(Filing No. 13-2 at 15.) In reaching that finding, he stated, he "considered all of the listed impairments, but particularly Listings 112.05 and 112.11." (Filing No. 13-2 at 16.)

The ALJ also concluded that W.H.R. "does not have an impairment or impairments that functionally equals the severity of the listings." (Filing No. 13-2 at 16.) The ALJ concluded that W.H.R. did not have an extreme limitation in any of the six functional equivalence domains, and that he had a marked limitation in only one: acquiring and using information. (Filing No. 13-2 at

4

18-24.) Therefore, the ALJ concluded that W.H.R.'s impairments did not functionally equal a Listing.

## II. APPLICABLE STANDARD

For an individual under the age of eighteen to be eligible for SSI, the claimant must have a "disability" as defined by 20 C.F.R. § 416.924. The Act defines disability of a child as a "physical or mental impairment, which results in marked and severe functional limitations, and ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(c)(a)(3)(C)(I). In determining whether a minor claimant is disabled, the Commissioner employs a three-step sequential analysis: (1) if the claimant is engaged in work that qualifies as substantial gainful activity, he is not disabled regardless of his medical condition, age, education, or work experience; (2) if the claimant does not have a medically determinable, severe impairment or combination of impairments, he is not disabled; and (3) if the claimant does not have an impairment that meets, medically equals, or functionally equals the criteria for any of the conditions included in 20 C.F.R. Part 404, Subpart P, App'x 1 (the "Listings") or does not meet the twelve-month durational requirement, he is not disabled. 20 C.F.R. § 416.924(a), (b); *see also Murphy v. Astrue,* 496 F.3d 630 (7th Cir. 2007).

In considering whether a child's impairment functionally equals a Listing, an Administrative Law Judge ("ALJ") must determine whether the claimant has an extreme limitation in *one* of the following domains, or a marked limitation in *two* of the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. 416.926(a). In determining whether such limitations exist, the ALJ

must consider the functional limitations of all medically determinable impairments, regardless of the severity of the impairment being taken into account. 20 C.F.R. 416.926(a).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). The standard of substantial evidence is measured by whether "a reasonable mind might accept [the evidence] as adequate to support a conclusion." *Powers v. Apfel,* 207 F.3d 431, 434 (7th Cir. 2000) (quoting *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995)). This Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but may only determine whether or not substantial evidence supports the ALJ's conclusion. *Overman v. Astrue,* 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993), but the ALJ must consider "all the relevant evidence," *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; he must "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon,* 270 F.3d at 1176.

### III. ANALYSIS

Ms. Brown raises two claims of error by the ALJ at step three of the analysis: that the ALJ erred in concluding that (1) W.H.R. did not meet the requirements of Listing 112.05(D); and (2) W.H.R. did not meet the requirements for functional equivalence of a Listing. (Filing No. 15.) The Commissioner responds that substantial evidence supports the ALJ's conclusion. (Filing No. 16.) The Court will address each claim in turn.

### A. Listing 112.05(D)

Listing 112.05 for an Intellectual Disability is "characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R. Part 404, Subpt. P, App. 1 § 112.05. That Listing requires "[a] valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." 20 C.F.R. Part 404, Subpt. P, App. 1 § 112.05(D). Ms. Brown argues that W.H.R. met both of these requirements, in that he had a valid full scale IQ score of 69, and a severe additional impairment of ADHD. (Filing No. 15 at 7-8.) She argues that the ALJ erred in concluding that W.H.R. did not meet this Listing. (Filing No. 15 at 7-8.) The Commissioner responds that the ALJ based his decision on substantial evidence, in that he considered the state agency reviewing physicians' assessments of whether W.H.R. met the Listings. (Filing No. 16 at 10-12.) In addition, the Commissioner argues that the ALJ's later discussion of whether W.H.R.'s impairments functionally equal a Listing make it clear that the ALJ considered and rejected the relevant evidence. (Filing No. 16 at 12-14.)

The Court concludes that the ALJ's treatment of whether W.H.R. met listing 112.05(D) requires reversal. The Commissioner argues that "the ALJ specifically cited the opinions of state reviewing psychologists Drs. Shipley and Pressner in finding that Claimant did not meet or medically equal any childhood listing, particularly Listings 112.05 and 112.11." (Filing No. 16 at 10.) However, neither Dr. Shipley nor Dr. Pressner addressed Listing 112.05 in their reports. Instead, the only Listings indicated under "Child Listings Considered" are 112.11 (ADHD) and 112.02 (Organic Mental Disorders). (Filing No. 13-3 at 5; Filing No. 13-3 at 18.) So the ALJ could not have relied on these reports in making a determination regarding Listing 112.05.

7

Second, the Commissioner argues that the ALJ provides substantial evidence supporting his conclusion that W.H.R. does not meet listing 112.05 in the section of his decision describing why W.H.R. does not functionally equal a Listing, particularly the section describing Dr. Deardorff's report. (Filing No. 16 at 15-16.) The Court disagrees. The key question that must be answered (as it appears undisputed that W.H.R. has the severe additional impairment of ADHD) is whether W.H.R. meets the first requirement of 112.05(D) – that he have a valid full scale IQ score of 70 or less. In discussing Dr. Deardorff's report, the ALJ cited Dr. Deardorff's language that W.H.R.'s "easy distractibility very likely interfered with his performance, and he appears to be of borderline to low-average intelligence." (Filing No. 13-2 at 19.) However the ALJ never stated a conclusion regarding whether the full scale IQ test results were *invalid* as a result of that "likely" interference, and therefore whether the first requirement of 112.05(D) was satisfied. While the ALJ stated that "no treating or examining physician has indicated any findings that would satisfy the severity requirements of any listed impairment," that statement is only true if the ALJ made the determination that Dr. Deardorff's IQ findings were invalid. The ALJ failed to build a logical bridge regarding this conclusion, so remand is required.

**B.     Functional Equivalence**

In considering whether a child's impairment functionally equals a Listing, the ALJ determines whether the claimant has an extreme limitation in one of the following domains or a marked limitation in two of the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. 416.926(a). The ALJ concluded that W.H.R. did not have an extreme limitation in any of those domains, and that he had a marked limitation in only one: acquiring and using information. (Filing

No. 13-2 at 18-24.) Therefore, the ALJ concluded that W.H.R.'s impairments did not functionally equal a Listing.

The ALJ concluded that W.H.R. had a less than marked limitation in interacting and relating with others. (Filing No. 13-2 at 23.) Ms. Brown argues that this conclusion is not supported by substantial evidence, because state agency reviewing psychologist Dr. Shipley concluded that W.H.R. had "marked" limitations in that domain. (Filing No. 17 at 4-5.) The Commissioner responds that substantial evidence supports the ALJ's determination that W.H.R. had a less than marked limitation in interacting and relating with others. (Filing No. 16 at 16-17.)

The ALJ's decision makes clear that he considered Dr. Shipley's opinion. (Filing No. 13-2 at 19.) The ALJ determined, however, that he would assign Dr. Shipley's opinion only "partial weight," because other evidence suggested that W.H.R. was "less limited in interacting and relating with others than Dr. Shipley opined."[1] (Filing No. 13-2 at 19.) The record reflects that such evidence includes, at least, the report of Dr. Pressner, who concluded that W.H.R. had less than marked limitations in that domain (Filing No. 13-3 at 18), and the teacher questionnaire, which indicated that for the majority of behaviors assessed, W.H.R. had no problems or only slight problems compared to a child without impairments (Filing No. 13-6 at 22).

The Court concludes that substantial evidence supports the ALJ's finding that W.H.R. had a less than marked limitation in interacting and relating with others. The Court finds no error in the ALJ's determination that W.H.R. did not functionally equal a Listing.

---

[1] The Court notes that the ALJ also concluded that Dr. Shipley's opinion would be given only partial weight because the ALJ found that W.H.R. was *more* limited in acquiring and using information than Dr. Shipley assessed—a conclusion with which Ms. Brown presumably agrees. (Filing No. 13-2 at 19.)

9

## IV. **CONCLUSION**

The Court has determined that the ALJ failed to build a logical bridge regarding his conclusion that W.H.R.'s impairments did not functionally equal a Listing. For the reason explained above, the final decision of the Commissioner is **REMANDED** for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four), consistent with this Entry.

**SO ORDERED.**

Date: 2/14/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov